**ROYAL INDEMNITY CO., Appellant,**

v.

**Michael PETROZZINO, Jr., Patrick Murano and Terrill H. Hallman.**

**No. 78–2145.**

United States Court of Appeals,
Third Circuit.

Argued March 22, 1979.

Decided May 2, 1979.

As Amended May 14, 1979.

David G. Crocco (argued), Royal Indemnity Company, Ridgewood, N. J., for appellant.

Louis C. Esposito (argued), Michael A. Querques, P. A., Orange, N. J., for appellee Michael Petrozzino, Jr.

Before SEITZ, Chief Judge, and ALDISERT and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

In this diversity action we are to determine whether the insurer of a bank is barred by the New Jersey statute of limitations from proceeding against a bank robber. The district court held that the insurer failed to commence its action within the applicable six-year period and dismissed the claim. Although there is no New Jersey decision precisely on point, we believe the New Jersey Supreme Court would hold that the action was timely. We therefore reverse the judgment of the district court.

### I.

On September 4, 1964, the Citizens National Bank in Inglewood, New Jersey was robbed. Within hours of the robbery, Michael Petrozzino, Jr. was arrested for the crime, and his arrest was reported in the press. Four days later the Royal Indemnity Company paid Citizens National Bank the sum of $28,433.84, representing the net loss of the bank. A criminal information was filed against Petrozzino and two others on March 29, 1966, charging them with conspiracy to rob the bank, and on May 18, 1966, Petrozzino pleaded guilty. On December 22, 1970, more than six years after the robbery, appellant commenced this civil action under its right of subrogation to the

bank. A default judgment was entered against Petrozzino on November 8, 1971. In 1978 the judgment was vacated solely to permit Petrozzino to interpose the defense of the statute of limitations; he has admitted all of the substantive allegations in the complaint.

The district court found that the bank employees who witnessed the robbery were, and are to this day, unable to identify Petrozzino as one of the robbers, that the bank knew of Petrozzino's arrest within a few days after the robbery, and that the insurance company made no effort to discover whether Petrozzino was in fact one of the robbers. In addition, the court found that the bank failed to verify the accuracy of various newspaper reports relating to Petrozzino and imputed knowledge of the reports to the appellant.[1]

In support of his limitations defense, Petrozzino relied on New Jersey's fictitious name practice. When a plaintiff is aware of an actionable claim but does not know the identity of a defendant, an action may be commenced against John Doe. When the plaintiff, acting with reasonable diligence, later ascertains the identity of the defendant, he may amend the complaint to specify the defendant's name. The amended complaint then relates back to the date of the filing of the original complaint so that the action is not barred by the statute of limitations. *Farrell v. Votator Division of Chemetron Corp.*, 62 N.J. 111, 299 A.2d 394 (1973); Rules of Court R. 4:26 4. Petrozzino argued that appellant could have filed a John Doe complaint immediately after the robbery, before it knew who had robbed the bank.

Appellant relied on New Jersey's "discovery principle" under which the statute of limitations does not begin to run until a plaintiff discovers, or in the exercise of reasonable diligence, should discover, that he has an actionable claim. *Fernandi v. Strully*, 35 N.J. 434, 173 A.2d 277 (1961). The insurer argued that until Petrozzino pleaded guilty in 1966, it could not reasonably have known against whom to bring an action, so that the limitations period should have been tolled. Its position was that the complaint filed in 1970 was timely because it was within six years of the discovery that Petrozzino robbed the bank.

The district court held that appellant should have commenced its action within six years of the robbery. If Petrozzino's identity was uncertain, a John Doe complaint would have permitted the bringing of a timely action. The court believed that the discovery principle was not applicable when the existence of the claim was known and the insurer merely lacked the name of the proper defendant. In the alternative, the district court held that if the discovery principle applied, appellant did not meet its burden of showing that the exercise of reasonable diligence would have failed to disclose the identity of the bank robber until six years prior to the filing of the complaint. Concluding that the action was barred by the statute of limitations, the court dismissed the complaint and entered judgment for the appellee. We disagree with both determinations of the district court.

## II.

Whether the New Jersey fictitious name practice precludes application of the discovery principle in this case is a difficult question. The district court dismissed the

---

1. The specific finding of the court was:

    The appellant failed to verify the accuracy of various newspaper reports of defendant's arrest. Knowledge of the reports is chargeable to the plaintiff, since through the exercise of reasonable diligence and intelligence they would have been discovered. The facts contained in the newspaper reports, if verified, would have justified at least a reasonable suspicion that defendant was one of the robbers. The plaintiff failed to make inquiries with the police to verify these facts, and to discover additional facts, which may have elevated a reasonable suspicion to probable cause. Whether such additional facts could have been discovered is unknown at this point, and plaintiff failed to carry its burden of proving that such facts could not have been acquired through the exercise of reasonable diligence and intelligence prior to December 22, 1964.

    Appendix at 17a–18a, n. 3.

complaint on the basis of this reasoning: "Neither party has pointed to any New Jersey case which holds that the discovery rule of *Strully* and its progeny is applicable where the plaintiff knows he has a cause of action but does not know the identity of the person against whom the cause of action exists. As I perceive the law of New Jersey, the discovery rule has no such application." Appendix at 13a–14a. We cannot accept the court's rationale for two reasons: (1) we do not think the New Jersey Supreme Court would hold that the discovery principle does not apply when the John Doe practice is available, and (2) even if that were the law of New Jersey, the John Doe practice was not available to the appellant in this federal diversity action.

### A.

■■ In *Farrell, supra,* the leading case on the John Doe practice, the Supreme Court of New Jersey addressed the situation in which a John Doe complaint had been filed within the limitations period and amended after its expiration to name the actual defendant. Citing New Jersey Rule of Court 4:9–3,[2] the court held that "[t]he amendment related back to commencement of the action." 62 N.J. at 120, 299 A.2d at 399. In the case before us, however, the district court did not apply the narrow rule announced in *Farrell,* but relied on the holding of the state's intermediate appellate court in *Lawrence v. Bauer Publishing & Printing Ltd.,* 154 N.J.Super. 271, 381 A.2d 358 (1977), in which the Superior Court interpreted *Farrell* as indicating that the John Doe practice and the discovery principle are mutually exclusive:

Nonetheless, we are satisfied that our court of last resort has not yet abrogated the necessity for "John Doe" complaints where an ascribable defendant (and the cause of action against him, her or it) is known, although a precise name is not known. We concur generally with the trial judge that *Farrell* commands:

> Our fictitious name practice requires that when a claimant is in a position to describe a defendant in terms of what he did or failed to do which gave rise to the claim, an action against that defendant must be commenced within the limitations period even though the claimant does not then know defendant's name.

154 N.J.Super. at 274, 381 A.2d at 360. Subsequent to the district court's decision, the Supreme Court of New Jersey reversed *Lawrence* on other grounds. 78 N.J. 371, 396 A.2d 569 (1979). Clearly, a federal court in a diversity action is not bound to follow a decision of an intermediate state appellate court when the state's highest court has reversed that decision. *See National Surety Corp. v. Midland Bank,* 551 F.2d 21, 28–32 (3d Cir. 1977). Although the Supreme Court did not specifically repudiate the Superior Court's interpretation of *Farrell,* we need not adhere to that interpretation. *Farrell* in no way necessitated the conclusion that filing a John Doe complaint is the only means to avoid the bar of the statute of limitations. It merely held that this is an acceptable means of avoiding injustice in certain cases where "the plaintiff does not know or have reason to know that he had a cause of action against an identifiable defendant until after the normal period of limitations has expired." 62 N.J. at 115, 299 A.2d at 396. Thus we do

---

2.     When Amendments Relate Back

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted relates

back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

not believe that *Farrell* precludes the application of the discovery principle enunciated in *Strully* and its progeny.

B.

█ Even if our interpretation of New Jersey law is incorrect, the district court's disposition was based on the erroneous assumption that the fictitious name practice was available in 1964 to the appellant in this case.

New Jersey Rule of Court 4:26–4,[3] which sets forth the John Doe procedure, was promulgated in 1969. It is therefore apparent that appellant could not have taken advantage of it in 1964. Also, it is not clear whether the common law fictitious name practice predating the rule would have applied. In *Farrell, supra,* the Supreme Court stated:

> Rule 7:4–5, originally adopted in 1948 with respect to civil practice in district and municipal courts, expressly provided that where the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, with appropriate amendment after his true name is ascertained. While no similarly worded rule was originally adopted with respect to the upper courts, the practice was undoubtedly known in those courts (*cf.* R.R. 4:30–4(d)) and the omission was presumably inadvertent; in any event, on February 25, 1969 a pertinent rule was promulgated, effective September 8, 1969 and applicable to civil practice in the superior, county and surrogate's courts. It specifically provided that if the defendant's true name is unknown to the plaintiff "process may issue against the defendant under a fictitious name" and directed that, prior to judgment, the plaintiff shall on motion

"amend his complaint to state defendant's true name." R. 4:26–4. The rule, being procedural, is in general to be deemed applicable to actions pending on its effective date as well as those instituted thereafter.

62 N.J. at 119–20, 299 A.2d at 398. This history leaves some doubt as to the state of the fictitious name practice in New Jersey courts of general jurisdiction before 1969. It is therefore uncertain that appellant could have taken advantage of the John Doe practice in 1964.

█ More important, our recent decision in *Britt v. Arvanitis,* 590 F.2d 57 (3d Cir. 1978), requires the conclusion that the New Jersey fictitious name practice was not available to appellant. Interpreting New Jersey Rule 4:9–3, under which *Farrell* held that an amendment identifying a real party related back to the time of the filing of the John Doe complaint, *Britt* held that the Rule "is nothing more than it purports to be—a rule of civil procedure which, under the doctrine enunciated in *Hanna [v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)], is not controlling in federal courts sitting in New Jersey." 590 F.2d at 61. *Britt* also held that Fed.R.Civ.P. 15(c), the analogous federal rule, would *not* permit relation back of an amendment replacing a John Doe defendant with an identified party. *Id.* at 60–61. Thus, even though this is a diversity case in which New Jersey substantive law controls, application of that law is necessarily tempered by the procedural differences between the state and the federal fictitious name practices. Because *Britt* makes it clear that the retroactive aspect of the New Jersey procedure is not available in federal court, we conclude that the discovery principle should apply.

**3.** Fictitious Names; In Personam Actions

In any action other than an action governed by R. 4:4–5 (affecting specific property or a res), if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient to identify him. Plaintiff shall on motion, prior to judgment, amend his complaint to state defendant's true name, such motion to be accompanied by his affidavit stating the manner in which he obtained that information. If, however, defendant acknowledges his true name by written appearance or orally in open court, the complaint may be amended without notice and affidavit. No final judgment shall be entered against a person designated by a fictitious name.

### III.

Having determined that the New Jersey discovery principle should have been applied by the district court, we turn to its alternative holding that the discovery principle would not toll the commencement of the limitations period. We accept the narrative or historical findings of the district court, but disagree as to the inferences to be draw therefrom. We believe that the principle, as developed in New Jersey case law, should produce a different outcome.

The discovery principle has grown out of the rule first announced in *Fernandi v. Strully, supra,* a medical malpractice case. The New Jersey Supreme Court stated that the statute of limitations begins to run "when the plaintiff knows or has any reason to know about the foreign object [negligently left in her body during an operation] and the existence of the cause of action based upon its presence." 35 N.J. at 450, 173 A.2d at 286. The principle has been developed and applied in cases involving professional negligence by engineers and surveyors, *New Market Poultry Farms, Inc. v. Fellows,* 51 N.J. 419, 241 A.2d 633 (1968); insurance claims, *Kielb v. Couch,* 149 N.J. Super. 522, 374 A.2d 79 (1977); negligent construction work, *Diamond v. New Jersey Bell Telephone Co.,* 51 N.J. 594, 242 A.2d 622 (1968); and misrepresentation, *Gibbons v. Kosuga,* 121 N.J.Super. 252, 296 A.2d 557 (1972). The principle has been applied under both the two year personal injury statute of limitations, N.J.S. 2A:14–2, and the general six year statute involved in this case, N.J.S. 2A:14–1. In addition, the state supreme court has held that

> since the cause of action does not accrue until discovery thereof, under the rationale of the discovery principle, *Fernandi v. Strully,* 35 N.J. 434, 450, 173 A.2d 277 (1961), the plaintiff should normally have the benefit of the legislative policy determination that he may institute his action at any time within [six] years from the date of such accrual.

.    .    .    .    .

[W]e see no reason why it should be required of the plaintiff that he bring his action with any degree of "expedition" after discovery of his cause of action, as intimated in some of the earlier cases. In principle, he should ordinarily have the full statutory [six] years after accrual, just as he does when discovery is contemporaneous with the actionable conduct. *Fox v. Passaic General Hospital,* 71 N.J. 122, 126, 363 A.2d 341, 343 (1976) (citations omitted).

The district court correctly stated that the appellant had the burden of proving that during the period from September 4, 1964, the day of the robbery, to December 22, 1964, six years prior to filing the complaint, reasonable diligence would have failed to disclose the existence of an actionable claim against Petrozzino. The facts found by the district court, however, convince us that appellant met its burden of proof. In a lineup conducted only hours after the robbery, none of the eyewitnesses was able to identify Petrozzino. At his arraignment, he pleaded not guilty. It was not until March 29, 1966—sixteen months after the robbery—that state law enforcement officials had sufficient evidence to file a criminal information against Petrozzino. While we do not necessarily accept appellant's contention that it could not reasonably have known of its claim against Petrozzino until May 18, 1966, the day he entered his guilty plea, we cannot accept the district court's inference that an insurance company should have discovered in four months what the police failed to learn for sixteen months. We do not believe the New Jersey courts would require a potential civil plaintiff to outstrip the police in a bank robbery investigation or risk a malicious prosecution claim for filing a complaint based on newspaper reports.

### IV.

We hold that under the facts of this case, proper application of New Jersey's discovery principle would have tolled the statute of limitations at least until December 22, 1964. Because the complaint was filed within six years of that date, the judgment of the district court will be reversed

and the cause remanded for proceedings consistent with this opinion.