[No. S122058. July 28, 2005.]

CALIFORNIA STATE PERSONNEL BOARD et al., Plaintiffs and Respondents, v.
CALIFORNIA STATE EMPLOYEES ASSOCIATION, LOCAL 1000, SEIU, AFL-CIO, Defendant and Appellant.

762

---

**COUNSEL**

Anne M. Giese and Robin O'Sullivan for Defendant and Appellant.

Howard L. Schwartz, Linda D. Buzzini, Patricia M. Keegan and Marguerite D. Seabourne for Department of Personnel Administration as Amicus Curiae on behalf of Defendant and Appellant.

Carroll, Burdick & McDonough, Ronald Yank, Gregg McLean Adam; and Benjamin C. Sybesma for California Correctional Peace Officers' Association as Amicus Curiae on behalf of Defendant and Appellant.

Karen J. Brandt, Elise S. Rose and Dorothy Bacskai Egel for Plaintiffs and Respondents.

## OPINION

**BAXTER, J.**—The California Constitution establishes that permanent appointments and promotions in state service shall be made solely on the basis of merit. In light of this constitutional imperative, we conclude the Legislature may not approve collective bargaining agreements requiring that state employers make such appointments and promotions based solely on the seniority status of candidates meeting all eligibility requirements, including the requisite ranking after a competitive examination in nontransfer cases, without allowance for comparative merit evaluations of those candidates.

### FACTUAL AND PROCEDURAL BACKGROUND

The Department of Personnel Administration (DPA) represents the Governor of California in collective bargaining negotiations with representatives of state employees in civil service. (Gov. Code, §§ 3517, 19815.4, subd. (g); all further statutory references are to this code unless otherwise specified.) The California State Employees Association (CSEA) is the exclusive elected representative for state employees in bargaining unit 1 (professional, administrative, financial, and staff services), unit 4 (office and allied staff), and unit 11 (engineering and scientific technicians).

At issue in this case are collective bargaining agreements that DPA and CSEA negotiated for units 1, 4, and 11. The agreements provide that "post and bid" pilot programs be applied within a limited number of classifications in the three units, requiring that permanent appointment and promotion of employees eligible for post and bid positions be based on seniority in state service. The programs were to sunset on July 2, 2003, in the absence of any future agreement on their continuance. The Legislature approved the resulting memoranda of understanding (MOU's), and the Governor signed them into law.[1]

Plaintiffs herein, the State Personnel Board (the SPB) and its executive officer, filed a petition for writ of mandate to enjoin defendants DPA and CSEA[2] from implementing the post and bid programs on the ground they violate the merit principle enshrined in article VII of the state Constitution for permanent civil service appointments and promotions. (Cal. Const., art. VII, § 1, subd. (b).)

---

[1] Although these MOU's expired while the appeal was pending, the Court of Appeal did not dismiss the matter as moot. We agree review is appropriate, because the constitutionality of the post and bid programs is an issue of continuing public interest that is likely to recur but evade review. (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 524, fn. 1 [110 Cal.Rptr.2d 412, 28 P.3d 151]; *Almassy v. L.A. County Civil Service Com.* (1949) 34 Cal.2d 387, 390 [210 P.2d 503].)

[2] Defendant DPA is not before this court. Accordingly, all further references to defendant are to CSEA.

The superior court ruled in plaintiffs' favor, concluding the challenged programs "will, as routinely implemented, fundamentally, directly, and inherently conflict with state Constitutional merit principles and, as such, are unconstitutional on their face." In essence, the court determined the merit principle "extends throughout the hiring process, up to and including the actual appointment or promotion of the individual" and is not limited to the initial qualification and examination phase resulting in the compilation of certified lists of ranked employees who are eligible for available post and bid positions.

The Court of Appeal reversed, finding no violation of the merit principle.

We granted plaintiffs' petition for review.

DISCUSSION

A. *The Constitutional Merit Principle and the State Civil Service Act*

Article VII of the California Constitution provides that, generally, the civil service includes "every officer and employee of the State" (*id.*, art. VII, § 1, subd. (a)) and that permanent appointment and promotion in the civil service "shall be made under a general system based on merit ascertained by competitive examination" (*id.*, art. VII, § 1, subd. (b)). This constitutional mandate, known as the "merit principle," was adopted by California voters in 1934 in an effort to eliminate the "spoils system" of political patronage from state employment and to ensure that "appointments and promotions in state service be made solely on the basis of merit."[3] (*Pacific Legal Foundation, supra*, 29 Cal.3d at p. 184; *id.* at pp. 181–183; see also *Professional Engineers in Cal. Government v. State Personnel Bd.* (2001) 90 Cal.App.4th

---

[3] We recounted a detailed history of the constitutional mandate in *Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168 [172 Cal.Rptr. 487, 624 P.2d 1215] (*Pacific Legal Foundation*). In brief, we explained: "In 1913, the California Legislature enacted a statute creating California's first civil service system in an attempt to combat the 'spoils system' of political patronage in state employment." (*Id.* at pp. 181–182.) By the early 1930's, however, that statutory system was failing due to abuse in the creation of exemptions and of authorizations for temporary employment that were not subject to the civil service statutes. (*Ibid.*) In response to the perceived statutory failures, the people of California, in 1934, adopted article XXIV of the state Constitution "to establish, as a constitutional mandate, the principle that appointments and promotions in state service be made solely on the basis of merit." (*Pacific Legal Foundation*, at pp. 182–184.) "The 1934 version of article XXIV was revised in 1970 under the auspices of the California Constitution Revision Commission, but the revision made no substantive changes in the provisions relevant to this action and merely deleted obsolete and superfluous language from the original provisions. [Citation.] Under a constitutional reorganization measure in 1976, article XXIV was repealed but its provisions were adopted verbatim as article VII." (*Id.* at p. 184, fn. 8.) Thus, "[t]he current provisions of article VII derive directly from the provisions of former article XXIV." (*Ibid.*)

678, 690 [109 Cal.Rptr.2d 375] (*Professional Engineers*).) ■ Another constitutional provision, also adopted in 1934, calls for a nonpartisan personnel board (the SPB) to enforce the civil service statutes (Cal. Const., art. VII, §§ 2, 3, subd. (a)) and for an executive officer to administer the statutes under the SPB's rules (*id.*, §§ 2, subd. (c), 3, subd. (b)).

■ To implement the merit principle, which we have deemed "inviolate" (*Pacific Legal Foundation, supra,* 29 Cal.3d at p. 194), the Legislature passed the State Civil Service Act (§ 18500 et seq.) (the Act). (§ 18570.) The Act's purpose is "to ensure that appointments to state office are made not on the basis of patronage, but on the basis of merit, in order to preserve the economy and efficiency of state service." (*State Personnel Bd. v. Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 432 [217 Cal.Rptr. 16, 703 P.2d 354] (plur. opn. of Broussard, J.).) To accomplish this, the Act generally requires appointing powers to fill vacant positions "by appointment" and, except as otherwise provided, requires appointments to "be made from employment lists." (§ 19050.)[4]

■ The Act specifies that an "employment list" includes an "eligible list," meaning "a list of persons who have been examined in an open competitive examination and are eligible for certification for a specific class." (§§ 18532, 18537.) Eligible lists are "established as a result of free competitive examinations open to persons who lawfully may be appointed to any position within the class for which these examinations are held and who meet the minimum qualifications requisite to the performance of the duties of that position as prescribed by the specifications for the class or by board rule." (§ 18900, subd. (a).)

■ The competitive examination process has been referred to as the " 'cornerstone' " of the merit principle. (*Alexander v. State Personnel Bd.* (2000) 80 Cal.App.4th 526, 542 [95 Cal.Rptr.2d 324] (*Alexander*), quoting *Lund v. California State Employees Assn.* (1990) 222 Cal.App.3d 174, 186 [271 Cal.Rptr. 425].) Under the Act, examinations to establish eligible lists must be "competitive and of such character as fairly to test and determine the qualifications, fitness, and ability of competitors actually to perform the duties of the class of position for which they seek appointment." (§ 18930, 1st par.) While all examinations must conform to this requirement, they may vary in terms of being "assembled or unassembled, written or oral, or in the form of a demonstration of skill, or any combination of these; and any investigation of character, personality, education, and experience and any tests of intelligence, capacity, technical knowledge, manual skill, or physical fitness which the board deems are appropriate, may be employed." (*Id.*, 3d par.) The names

---

[4] An "appointing power" refers to "a person or group having authority to make appointments to positions in the State civil service." (§ 18524.)

of the persons who have attained passing marks in the examination "shall be placed on the [eligible or promotional] list in the order of final earned ratings," subject to modification for application of constitutional veterans' preferences. (§ 18937.)

The civil service classifications affected by the MOU's in this case are subject to the Act's so-called rule of three ranks, which requires certification of a list to the appointing power with the names of those eligible employees who place in the top three ranks of scores and who are willing to accept appointment under the conditions of employment specified. (§ 19057.1; see Cal. Code Regs., tit. 2, § 254.)[5] For purposes of ranking, scores are rounded to the nearest whole percent; a rank consists of one or more eligible employees with the same whole percentage score. (§ 19057.1.)

■ In making a hiring decision, the appointing power must select a candidate from the eligible list, but need not select the one with the highest ranked score. (See Cal. Code Regs., tit. 2, § 254.) This rule safeguards the merit principle by assuring that one of the better scoring candidates, if not the top scoring one, will be chosen. (See *Alexander, supra,* 80 Cal.App.4th at p. 542.)

■ Finally, the Act imposes a mandatory probationary period for permanent appointments from employment lists. (§ 19170 et seq.; Cal. Code Regs., tit. 2, § 322.) The probationary period gives the appointing power "the opportunity to observe the conduct and capacity of the probationer, and if, in the opinion of that power, the probationer is not fitted to discharge the duties of the position, then he [or she] may be discharged by the summary method provided for in the Civil Service Act before he [or she] acquires permanent civil service status." (*Wiles v. State Personnel Board* (1942) 19 Cal.2d 344, 347 [121 P.2d 673]; see § 19173, subds. (a), (b).) This serves "to supplement the work of the civil service examiners in passing on the qualifications and eligibility of the probationer. " (*Wiles v. State Personnel Board,* at p. 347; see Cal. Code Regs., tit. 2, § 250, subd. (c).)

---

[5] Under the governing statute, the SPB may certify as eligible those candidates with lower scores in order to have three ranks on the certified list. (§ 19057.1.) Additionally, examinations may be conducted until at least three names appear on the list. (*Ibid.*) Finally, a candidate in the top three ranks may not challenge a department's selection of another eligible candidate on the basis that the person selected is less qualified. The grounds for a challenge are limited, and include claims pertaining to improper withholding of a name from a certified list, unlawful discrimination (see § 19700 et seq.), and appeals of examination results or claims alleging violation of board regulation or policy. (See Cal. Code Regs., tit. 2, § 53.1; see generally Cal. Code Regs., tit. 2, § 53.)

There is another rule, the rule of three names, which requires the SPB to certify an eligible list naming the three persons who stand highest on the promotional list for the class in which the position belongs and who have indicated their willingness to accept appointment. (§ 19057.) That rule applies to other classifications not at issue here.

Although the Legislature must at all times abide by the merit principle, it retains "a 'free hand' to fashion 'laws relating to personnel administration for the best interests of the State.' " (*Pacific Legal Foundation, supra,* 29 Cal.3d at p. 184.) Moreover, "[n]othing in the Constitution requires that all civil service rules apply to all public employees and nothing prohibits the Legislature from experimenting to treat certain employees under different rules, *provided the merit principle is not infringed.*" (*Alexander, supra,* 80 Cal.App.4th at p. 536.)

### B. *The Post and Bid Pilot Programs*

As indicated in part A, *ante,* the process relating to permanent civil service appointments and promotions generally involves three phases. The first phase, pertaining to eligibility, involves administration of a competitive examination to a group of candidates seeking permanent appointment or promotion to positions within a classification. The examination results in a certified eligible list identifying those candidates with examination scores in the top three ranks who have indicated their willingness to accept appointment under the conditions of employment specified. In the second phase, the appointing power reviews the candidates on the eligible list and selects the candidate it finds best suited to the position it seeks to fill. The third phase requires the appointing power to evaluate the selected candidate throughout a probationary period to determine whether permanent appointment or promotion to the position is merited.

The post and bid pilot programs follow this general process for the eligibility phase and the probationary phase, but mandate a significantly different procedure for the hiring or selection phase, as described below.

The post and bid programs require appointing powers to post, in approved locations, bid notices regarding available positions in specified clerical, technical, and professional classifications. Eligible employees may bid for posted positions by completing and submitting the appropriate bid forms.

An employee must meet several requirements to be eligible to bid. First, the employee must have immediate list eligibility or be eligible for appointment under the civil service rules and either have permanent full-time civil service status, or have permanent intermittent civil service status and meet certain specified criteria. Although each MOU is slightly different, an employee in a nontransfer situation must score within the top three ranks on a competitive examination in order to be eligible for a list appointment or promotion. Each employee must not only meet certain minimum qualifications for the posted position and possess the physical ability to perform the essential job functions, but also must have demonstrated an overall satisfactory performance in his or her current job. Finally, the employee must not be

on probation or on an official training and development assignment, and must not have had an adverse action related to job performance in the 12 months preceding the bid process.

Once the bidding process is closed, the post and bid programs generally require the appointing power to hire or promote from among eligible bidders—including those employees scoring in the top three ranks on a competitive examination and meeting all other eligibility requirements—on the basis of seniority.[6] Specifically, the eligible bidder with the most seniority in state service must be selected, regardless of the nature of the positions in which the seniority was earned, the specific duties and responsibilities of the position to be filled, or the relative qualifications of the competing eligible bidders.

Two of the MOU's provide for a 30-day trial period during which management or the selected employee may terminate the post and bid appointment and the employee may be returned to the former position. All three MOU's retain the probationary period applicable under state civil service statutes and rules. (§ 19170 et seq.; Cal. Code Regs., tit. 2, § 322.)

The MOU's state they are "not intended to . . . contravene the spirit or intent of the merit principle in State employment," and that "[a]ny matters which concern the application of the merit principle to State employees are exclusively within the purview of those processes provided by Article VII of the State Constitution or bylaws and rules enacted thereto."

C. *Analysis*

We must decide whether the Legislature's approval of the post and bid pilot programs violates the merit principle.

Plaintiffs contend the merit principle applies throughout the appointment and promotion process, including the hiring phase that follows the ranking of eligible candidates after a competitive examination. In plaintiffs' view, an appointing power's ability to interview the candidates in the top three ranks and to evaluate their comparative fitness to the specific needs and duties of posted positions is a fundamental and indispensable component of the merit principle. By imposing an absolute seniority-based preference during the hiring phase, plaintiffs argue, the programs violate the constitutional mandate

---

[6] Except for certain positions in the Employment Development Department, the post and bid programs for unit 1 and unit 4 also specify that selection must be based on the departmental geographic area.

that permanent civil service appointments and promotions be based solely on merit.[7]

Conversely, defendant asserts the programs do not violate the Constitution because their seniority-based selection procedure occurs after administration of competitive examinations and after adherence to the rule of three ranks. Amicus curiae California Correctional Peace Officers' Association adds that seniority is a recognized merit factor that is properly considered. Finally, defendant contends contractual trial periods and statutory probationary periods ensure the selection of qualified employees.

Case law establishes that state employers generally may not make permanent appointments or promotions in the absence or disregard of competitive examinations and the ranking of examination takers. (E.g., *Professional Engineers, supra,* 90 Cal.App.4th 678; *Kidd v. State of California* (1998) 62 Cal.App.4th 386 [72 Cal.Rptr.2d 758] (*Kidd*).) But the issue whether the merit principle applies to the hiring phase of the appointment and promotion process is one of first impression.

 In determining the constitutionality of the legislatively sanctioned post and bid programs, "we are guided 'by well settled rules of constitutional construction. Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly or by necessary implication denied to it by the Constitution. . . . Secondly, all intendments favor the exercise of the Legislature's plenary authority: "If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. . . ." ' [Citations.] On the other hand, 'we also must enforce the provisions of our Constitution and "may not lightly disregard or blink at . . . a clear constitutional mandate." ' [Citation.]" (*County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 284–285 [132 Cal.Rptr.2d 713, 66 P.3d 718].) Finally, challenges to the facial constitutionality of legislative acts require a demonstration that the acts "inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." (*Pacific Legal Foundation, supra,* 29 Cal.3d at p. 181.)

---

[7] Plaintiffs represent they recognize and respect the laws and rules protecting employees' seniority in state civil service. They also support adequately compensating civil service employees for their long-term, dedicated, and competent performance. Plaintiffs' only contention here is that, to adhere to the merit principle, appointing powers cannot be required to "substitute" seniority in the civil service for merit when selecting eligible candidates for permanent appointments and promotions.

 As indicated, article VII of the California Constitution provides that "permanent appointment and promotion shall be made under a general system based on merit ascertained by competitive examination." (Cal. Const., art. VII, § 1, subd. (b).) By its terms, the constitutional provision unmistakably commands that all permanent appointments and promotions in the civil service be based on merit, and that merit be determined on the basis of competition.

The history of the constitutional amendment adopting this provision confirms this meaning. In explaining the provision to the voters who ultimately approved it, the ballot materials stated: "The purpose of this constitutional amendment is to promote efficiency and economy in State government. The sole aim of the act is to prohibit appointments and promotion in State service except on the basis of merit, efficiency and fitness ascertained by competitive examination."[8] (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 6, 1934), argument in favor of Prop. 7, p. 12.) In summing up the provision, the materials stated: "[T]his constitutional amendment provides: (1) *Employment in the classified service based solely on merit and efficiency . . . .*" (*Ibid.*, italics added.)

In *Pacific Legal Foundation, supra,* 29 Cal.3d 168, we explained that, while article VII, section 1, subdivision (b) of the state Constitution refers to "a general system based on merit," the 1934 ballot arguments "make[] it quite plain that the draftsmen of the provision intended only 'to prohibit appointment and promotion in State service except on the basis of merit,' and did not intend to engrave into the state Constitution every aspect of the then current civil service system." (*Pacific Legal Foundation,* at p. 184, fn. 7.) Consistent with *Pacific Legal Foundation,* we find the full constitutional phrase, "a general system based on merit ascertained by competitive examination" (Cal. Const., art. VII, § 1, subd. (b)), refers to " 'the concept "under which public employees are recruited, selected, and advanced under conditions of political neutrality, equal opportunity, and competition on the basis of merit and competence." ' " (*Pacific Legal Foundation,* at p. 184, fn. 7.) By referencing this general concept, article VII requires that appointment and promotion decisions, not just preappointment eligibility determinations and other screening measures, be based on merit. (See also Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 3, 1970), argument in favor of Prop. 14, p. 24 [describing proposed initiative amendments as

---

[8] As enacted in 1934, the constitutional provision provided that "appointment and promotion shall be made on the basis of merit, efficiency and fitness ascertained by competitive examination." (Cal. Const., former art. XXIV.) Subsequent revisions of the 1934 provision merely deleted obsolete and superfluous language and made no substantive changes in the provisions relevant to this action. (See *ante,* fn. 3.)

continuing "the requirement that permanent appointment and promotion in the state civil service shall be based on merit *and* competitive examinations" (italics added)].)

In sum, "[b]oth the constitutional provision and the ballot argument[s] in favor thereof are remarkably straightforward: The Legislature . . . has a free hand with regard to personnel administration *except* that with regard specifically to appointment to service, merit and efficiency shall be the only considerations. The merit principle is sacrosanct; however free the hand of the Legislature, neither that hand nor the hand of any other branch or agency of government can manipulate the merit principle to serve ends inconsistent with article VII of the state Constitution." (*Kidd, supra,* 62 Cal.App.4th at pp. 401–402, fn. omitted.)

Plaintiffs contend that seniority may not be "substituted" for merit at the postexamination phase when appointing powers make their hiring decisions. To the extent this contention suggests seniority is not at all reflective of merit, we disagree and do not question that seniority may be an appropriate factor in evaluating merit and efficiency. (Accord, *Apuzzo v. County of Ulster* (1983) 98 A.D.2d 869 [470 N.Y.S.2d 814, 815]; *Gaskill v. Mayor and Comm'rs, etc.* (N.J.Super.Ct.App.Div. 1977) 373 A.2d 1019, 1020 [149 N.J. Super. 364]; *Heminger v. Police Com'n of the City of Fort Wayne* (Ind.Ct.App. 1974) 314 N.E.2d 827, 832–833 [161 Ind.App. 72].) "Generally, years of seniority indicate years of on-the-job experience." (*Communications Workers of America v. State of California* (1984) PERB Dec. No. S-CE-134-S [8 PERC ¶ 15138, p. 737] (*Communications Workers*).)[9] Indeed, California regulations recognize that time spent on a job is job related when ordinarily requiring employees to spend a specified amount of time in a job class to become eligible for promotion to the next level of that class. (See Cal. Code Regs., tit. 2, § 212; *Communications Workers, supra,* PERB Dec. No. S-CE-134-S [8 PERC ¶ 15138, p. 737]; see also § 18950 et seq. [authorizing addition of career credits to examination scores for promotions].)

Seniority in state service, however, may or may not reflect fitness for a posted position. Much depends on whether a candidate's current and previous positions (or other background) provided the job-related knowledge, skills, abilities, and experience necessary for efficient and successful performance in the posted position. (See *Lucchesi v. City of San Jose* (1980) 104 Cal.App.3d

---

[9] *Communications Workers* was a decision by an administrative law judge (ALJ) finding that a collective bargaining proposal for a seniority-based selection process did not conflict with the SPB's exclusive statutory jurisdiction over the area of promotions. In doing so, the ALJ rejected the SPB's argument it was constitutionally forbidden from considering seniority in its promotional scheme because seniority is neither job related nor merit related. While we agree with the decision's rejection of that position, we note it did so in the limited context of a claim the state employer could not negotiate over issues that were not job related or merit related.

323, 329 [163 Cal.Rptr. 700] [in invalidating a city ordinance that gave preference to city employees for firefighter positions, court observed that a city employee with no experience in a field related to the position sought is not more competent than a noncity employee with 25 years' experience in a related field].) More importantly here, greater seniority does not necessarily equate to greater ability, efficiency, or productivity. Thus, while consideration of seniority may be appropriate as part of a general merit-based system of appointments and promotions, depriving appointing powers of the ability to interview eligible candidates and base their hiring decisions on a broader range of criteria bearing on fitness and efficiency "inevitably pose[s] a present total and fatal conflict" (*Pacific Legal Foundation, supra*, 29 Cal.3d at p. 181) with the constitutional command that "appointments and promotions in state service be made solely on the basis of merit" (*id.* at p. 184).

We acknowledge that the civil service statutes providing for competitive examinations and the rule of three ranks afford a "bulwark against favoritism." (*Professional Engineers, supra*, 90 Cal.App.4th at p. 693.) But the statutes readily indicate that the competitive examinations that result in eligible lists typically test and rank only the general fitness and minimum qualifications required for an entire class of positions. (See §§ 18523, 18532, 18900, 18930.) These classes may encompass many different positions that vary somewhat in their duties and responsibilities, particularly if numerous agencies in the state use them. Thus, while such examinations may effectively prevent the selection of incompetent political favorites, they do not test for all the specific knowledge, skills, abilities, and other personal characteristics and attributes that might reflect an eligible candidate's superior fitness for a particular position within a class. (See *ibid.*; *Professional Engineers, supra*, 90 Cal.App.4th at p. 716 (dis. opn. of Scotland, J.) ["[e]ligible lists are established for classes of position, but are not position-specific"].)

For these reasons, we look to the purpose of a competitive examination, which "was (and is) to provide accurate information to the hiring authority about the *relative* merits of the candidates, but not unfairly (or unconstitutionally) circumscribe the appointing power's ability to make the actual selection." (*Professional Engineers, supra*, 90 Cal.App.4th at p. 702.) Mindful of that purpose and the constitutional principle the examination is designed to serve, we conclude the Legislature may not approve collective bargaining agreements requiring that state employers make their permanent appointments and promotions based solely on the seniority status of employees meeting all eligibility and ranking requirements, without allowance for comparative merit evaluations of those employees.

Our conclusion is fully consistent with the manner in which permanent appointments and promotions are handled outside the post and bid

process. Appointing powers ordinarily have authority, consistent with their obligations under the merit principle, to consider all job-related qualifications when hiring an eligible candidate for a specific position. (See Cal. Code Regs., tit. 2, § 250, subd. (a).)[10] Significantly, appointing powers are not compelled to select the candidate who is ranked highest on an eligible list, but may evaluate other merit-based criteria in addition to list ranking. As courts have aptly observed, " '[i]t would be perverse to sanctify rank ordering of exam scores in a quest to maximize competitiveness if, as a result, other considerations relevant to merit and fitness are discounted or swept aside.' " (*Professional Engineers*, *supra*, 90 Cal.App.4th at p. 696, quoting *McGowan v. Burstein* (1988) 71 N.Y.2d 729, 734 [525 N.E.2d 710, 530 N.Y.S.2d 64].)

Even though the post and bid programs preserve the rule of three ranks, their seniority-based selection procedures leave no room at the postexamination hiring phase for comparatively evaluating employees who meet the threshold requirements for eligibility and ranking. By dictating an absolute seniority preference in hiring, and foreclosing appointing powers from interviewing eligible candidates and considering a broader and more meaningful range of merit-based criteria as appropriate to determine the candidate most qualified for a posted position, the programs undermine the constitutional mandate that appointments and promotions be based on merit.

We are aware that, before the Legislature ratified the MOU's, the Legislative Counsel's office issued an opinion concluding they did not violate the merit principle if supplemented by an addendum reflecting the parties' agreement to apply the seniority selection procedure only where a competitive examination had been held or in cases of transfer where an examination was not required. But Legislative Counsel's opinions are only as persuasive as their reasoning (see *Grupe Development Co. v. Superior Court* (1993) 4 Cal.4th 911, 922 [16 Cal.Rptr.2d 226, 844 P.2d 545]), and we do not find the opinion offered here persuasive for all the reasons identified above.

Defendant argues the post and bid programs are constitutionally valid under the following primary rationale: The Legislature has the authority and ability under the state Constitution to pass personnel administration laws in

[10] This regulation, which became operative on May 17, 2004, affirms that appointments to civil service positions "shall be made on the basis of merit and fitness, defined exclusively as the consideration of each individual's job-related qualifications for a position, including his/her knowledge, skills, abilities, experience, education, training, physical and mental fitness, and any other personal characteristics relative to job requirements, as determined by candidate performance in selection procedures, including, but not limited to, hiring interviews, reference checks, background checks, and/or any other procedures, which assess job-related qualifications and are designed and administered to select those individuals who best meet the selection need." (Cal. Code Regs., tit. 2, § 250, subd. (a).)

the state's best interests and has accomplished this by enacting the current civil service statutes. As relevant here, these statutes require certification of eligible lists naming those candidates who represent the three highest ranks and are willing to accept appointment to open positions, and they require the appointing powers to make their selections from these lists. (§ 19057.1.) Subject to these restrictions and certain statutorily prohibited criteria, the civil service laws generally give the appointing powers flexibility to exercise hiring discretion. Because appointing powers may select any candidate in the top three ranks (*ibid.*) and are subject to no hearing or review process to determine if their final selections are based solely on merit (see Cal. Code Regs., tit. 2, § 53), their actual hiring decisions are discretionary and need not be based on an additional merit review. In sum, because hiring decisions are discretionary, the Legislature may limit that discretion by adopting a conclusive seniority-based preference for selection among eligible candidates. We are not convinced.

In adopting the constitutional merit principle, California voters made clear their intent that permanent civil service appointments and promotions be made solely on the basis of merit. No matter what discretion the Legislature has purported to give or withdraw from appointing powers, it does not have a free hand to approve MOU's or enact statutes that flout this mandate. Defendant offers no authority suggesting the merit principle does not or cannot extend to the hiring phase of the appointment process on the ground there is no legislatively sanctioned administrative process to review merit challenges. Whether or not an administrative process is in place, the Legislature cannot validly approve programs that operate in contravention of the Constitution.

Defendant next asserts the post and bid programs impose a number of eligibility requirements, in addition to list eligibility, that adequately protect the merit principle. For instance, the employee must have demonstrated an overall satisfactory performance in the current job and have received no adverse action related to job performance in the preceding 12 months. But these are simply threshold requirements that any employee must meet to be eligible to bid. Satisfaction of these minimum requirements does not serve to distinguish between bid-eligible candidates.

Indeed, even if the foregoing criteria could be viewed as providing independently relevant information on a candidate's overall competence to perform in a posted position, their value is minimized because the post and bid programs obviate any opportunity or need for their qualitative assessment. For example, it would make no difference if the most senior eligible candidate had a number of adverse actions that were more than a year old, while an eligible candidate with three months less seniority had none at all.

Neither would it matter that a less senior candidate had developed job-related skills that were far more relevant to a posted position than the skills the most senior candidate acquired, nor that a less senior candidate was exceptionally productive and skilled, while the most senior candidate was only satisfactory in meeting job expectations. Under any of these circumstances, the post and bid programs require selection of the most senior eligible candidate, in disregard of these merit-based job-related considerations.

Defendant relies on a passage in *Alexander, supra,* 80 Cal.App.4th 526, 542, stating "the merit principle does not require that the most qualified or best candidate be chosen." Fairly read, however, that passage merely recognizes the Constitution does not require the appointment of the most qualified or best candidate, *as determined by rankings on an eligible list.* Indeed, the passage supports our conclusion that the merit principle is served when an appointing power relies both on ranking and other merit considerations to select the eligible candidate it finds best suited for a position. In any case, nothing in *Alexander* suggests that merit considerations have no constitutional relevance in the hiring process once competitive examinations have been administered and the three highest ranks ascertained.

Finally, defendant argues the post and bid programs protect hiring discretion and ensure selection of qualified employees by allowing termination for unsatisfactory performance during either the trial period provided in the MOU's or the probationary period prescribed by statute. But those periods are operative only after state resources have been needlessly consumed in selecting and training the unfit employee, and do nothing to mitigate the further time and resources that presumably will be spent finding and training a replacement. Conversely, interviewing eligible candidates and making evaluations as necessary to assess each candidate's comparative fitness for a posted position can often avoid the waste of state resources by ensuring that a careful and thoroughly considered hiring decision is made in the first instance. Thus, eliminating the ability of appointing powers to make such informed decisions at the outset tends to frustrate rather than promote the goal of the merit principle and the purpose of the civil service statutes to achieve efficiency and economy in state government.

CONCLUSION AND DISPOSITION

While collective bargaining may be used to negotiate many terms and conditions of employment, it cannot be used to circumvent the constitutional mandate that permanent appointment and promotion in the civil service be based solely on merit. By designating seniority as the sole consideration for the permanent appointment and promotion of eligible employees, the

legislatively approved post and bid provisions impermissibly conflict with this fundamental mandate.

We reverse the judgment of the Court of Appeal, and remand the matter to that court for further proceedings consistent with the views expressed herein.

George, C. J., Kennard, J., Werdegar, J., Chin, J., and Moreno, J., concurred.